**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MARK E. BROWN,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 17-2211-JAR** |
| **KEYSTONE LEARNING SERVICES,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Mark E. Brown brings this action against his former employer, Defendant Keystone Learning Services, alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  Before the Court is Defendant's Motion for Summary Judgment (Doc. 37).  The motion is fully briefed and the Court is prepared to rule.  For the reasons explained in detail below, the Court grants Defendant's motion for summary judgment on all claims.

### I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue

of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the

non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and

entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that

does not bear the ultimate burden of persuasion at trial need not negate the other party's claim;

rather, the movant need simply point out to the court a lack of evidence for the other party on an

essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to

"set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party

may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must

"set forth specific facts that would be admissible in evidence in the event of trial from which a

rational trier of fact could find for the nonmovant."[10]  To accomplish this, the facts "must be

identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated

therein."[11]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge

---

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Adams*, 233 F.3d at 1246.

and shall set forth such facts as would be admissible in evidence.[12]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## II.    Uncontroverted Facts

The following material facts are uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff as the nonmoving party.

Defendant Keystone Learning Services ("Keystone") is a special education cooperative that provides services to eight school districts in Kansas, offering learning opportunities to students struggling in traditional academic settings.  Keystone is a Kansas governmental entity duly authorized and existing pursuant to the Kansas Interlocal Cooperation Act.[16]  Defendant maintains policies and procedures adopted by its governing board of education which prohibit discrimination or retaliation based upon inter alia, race, color, religion, sex, national origin, age, handicap, or disability in the admission, or access to, or treatment in Defendant's programs and

---

[12]Fed. R. Civ. P. 56(c)(4).

[13]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[16]K.S.A. § 12-2901, *et seq.*, and § 72-13,100.

activities.  These policies and procedures include providing employees with formal and informal procedures to complain of discrimination and harassment.

Plaintiff Mark Brown, who is African American, applied for the following teaching positions advertised by Keystone in the summer of 2015: special education grades 7 through 12, and substitute teacher grades K through 12.  Keystone sent Plaintiff a letter on September 1, 2015, stating: "This is a notification that the substitute teaching position for which you recently interviewed for has been filled.  However, we will keep your application materials on file for future openings."[17]  Plaintiff was ultimately hired by Defendant on October 26, 2015, as a Substitute JDLA Special Education Teacher at John Dewey Learning Academy under a written employment contract.  The start date for the contract was October 26, 2015, and there was no end date provided.

The position was designated as an English position working with special education students.  Plaintiff's teaching license from the State of Kansas allows him to teach in the areas of learning disabilities, physical education, health, and psychology.  Although he may not have been qualified to be hired for a permanent English teaching position, since he had a teaching license, he was qualified to be hired as a substitute teacher.

John Dewey Academy Principal Terri Coughlin told Plaintiff upon hire that he would be the first African-American teacher at the school, and that she was happy to have some diversity because the school had at least two African-American students.  In December 2015, at least two of these African-American students left John Dewey Academy.  In mid-December 2015, Coughlin told Plaintiff that Keystone had hired a permanent teacher to fill the position for which he had been a substitute, and that the school would no longer need his services after the end of

---

[17]Doc. 38-10, Ex. J.

the semester that month.  Plaintiff was unaware of Defendant's grievance procedure that may

have allowed him to challenge the termination.  Instead, Defendant retained legal counsel, who

sent the following letter to Defendant on December 29, 2015:

> I have been retained to represent Mr. Brown in this matter.
>
> My understanding is that Mr. Brown was hired by contract for a long term substitute position for special education students for an English class.  However, on December 15, 2015 you indicated to Mr. Mark Brown that his last day at work would be December 17, 2015.  Mr. Brown's contract indicates an annual, renewable employment relationship.  It is and has always been Mr. Brown's intention to fulfill his duties under the contract.  As such, he is ready and willing to return to work after the Christmas break.
>
> It seems the only basis for terminating Mr. Brown's employment is lack of funding. However, I understand that Mr. Brown is being replaced by another teacher, indicating there is not a lack of funding.  Additionally, Keystone Learning Services had a job posting on December 18, 2015 seeking substitute teachers and special education teachers.  Mr. Brown is certified in both these areas.
>
> If you wish to resolve this matter amicably, please contact me at your earliest convenience.  Mr. Brown, is ready, willing, and able to be a substantial asset to your school.[18]

The parties' attorneys discussed Plaintiff's demand letter, and then Andy Ewing,

Executive Director at Keystone, told Coughlin that he wanted to find a position for Plaintiff for

the spring.   Defendant eventually offered and Plaintiff accepted a contract for the remainder of

the 2015–16 school year.  This new contract was a "Temporary Employment Contract 2015-

2016," for a "substitute teacher, an employment at-will position."[19]  The contract term was from

January 5, 2016, to May 25, 2016.  Plaintiff understood that this was a temporary contract that

would expire on May 25, 2016.  Plaintiff started working again at John Dewey Academy before

---

[18]Doc. 38-6, Ex. F.

[19]Doc. 38-7, Ex. G.

the Board approved the contract, however, his employment was contingent upon Board approval. Plaintiff finished the term of this temporary contract and was paid all compensation due.

At the end of the 2015–16 school year, Coughlin offered Plaintiff a temporary position for the 2016–17 school year as a paraprofessional; she told Plaintiff that there were no teaching positions available. Principal Coughlin also asked Plaintiff if he would be interested in a position with Keystone's "Harvester program" over the summer, helping another teacher named Mr. Millner. Ewing understood the Harvester program opportunity and the paraprofessional position for 2016–17 to be one in the same, however, Coughlin understood that the Harvesters program was "its own position."[20]

Plaintiff told Coughlin he was interested in the Harvesters program after she told him the rate of pay and the days he would be required to work. Mr. Millner emailed Plaintiff a schedule that included a start and end date. When he arrived on the first day of the program, he was sent home. By that time, Plaintiff's attorney had contacted Defendant by letter stating that Plaintiff continued to be employed by Defendant under the *original* 2015–16 employment contract signed in October 2015. Defendant understood from this letter that Plaintiff would not accept any position other than the substitute teaching position he held the previous year.

Plaintiff did not separately apply for any vacant employment positions with Defendant after his temporary employment contract expired in May 2016, nor did he notify Keystone's Human Resources Manager, Lushena Newman, that he was interested in a full-time position at the end of his term. In reliance on the September 1, 2015 letter he received from Newman on behalf of Keystone, Plaintiff believed that his original application for the 2015–16 substitute teacher position in the summer of 2015 sufficed for him to be considered for any regular teaching

---

[20]Doc. 45-4, Ex. 3 at 47:2–10.

positions that became vacant for the 2016–17 school year.  Newman usually held onto an application for approximately eighteen months, and contacted the applicant if they qualified for a future vacancy.  But Newman testified that once an applicant is hired by Keystone, either as a permanent or substitute teacher, "their application is no longer in my pile of contact information."[21]  After becoming a Keystone employee, the person must let Newman know if they remain interested in a future position.

Defendant advertises its vacant teaching positions online.  Defendant also sends emails to current employees, notifying them of vacant positions.  Plaintiff did not receive these emails in the spring and summer of 2016, most likely because he was a temporary substitute teacher who was not on the email list.  He later discovered that Keystone had advertised on the Kansas teaching website for special education teachers throughout the spring of 2016.

Defendant selected and hired teachers for the 2016–17 school year from the individuals who applied and were qualified for those positions.  Newman did not consider Plaintiff interested in full-time employment during the 2016-17 school year based on his 2015 application because "that's a new school year,"[22] and because he had not separately applied for any posted positions.

During the period of his employment, Plaintiff did not complain of race discrimination or retaliation.  On July 5, 2016, he dual-filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") alleging race discrimination and retaliation against Keystone.  In this charge, the date of the alleged incident is April 28, 2016 to May 16, 2016.  He alleges he was denied a position for the 2016–17 school year, even though teaching positions were available.  He further states that he

---

[21]Doc. 38-4, Ex. D at 17:19–25.

[22]*Id.* at 19:1–2.

was terminated on May 16, 2016, in retaliation "for having openly opposed acts and practices forbidden by the Kansas Act Against Discrimination."[23]

## III.  Discussion

In the Pretrial Order, Plaintiff alleges race discrimination claims under Title VII and 42 U.S.C. § 1981 based on the following discrete adverse employment actions: (1) termination of his employment in December 2015 in favor of a less favorable employment agreement in January 2016; (2) failure to hire for the 2016–17 school year; and (3) failure to hire for the Harvesters program.[24]  Plaintiff also alleges a claim of retaliation under Title VII and § 1981 for challenging the termination decision in December 2015.  The Court first addresses Defendant's argument that Plaintiff failed to exhaust certain discrimination claims under Title VII by not including them in his administrative charge.  Next, the Court addresses the merits of Plaintiff's claims.

### A.  Title VII Claims

### 1.  Failure to Exhaust Disparate Treatment Claims for Unlawful Termination and Failure to Hire for Harvesters Program

At the time Defendant moved for summary judgment, failure to exhaust administrative remedies was considered a jurisdictional bar to a Title VII claim in the Tenth Circuit.[25]  Thus, Defendant moved to dismiss for lack of jurisdiction any Title VII claims not included in Plaintiff's July 5, 2016 administrative charge.  But on August 17, 2018, a panel of the Tenth Circuit, after obtaining authorization from the full court, overruled that precedent in *Lincoln v. BNSF Railway Co.*, holding "that a plaintiff's failure to file an EEOC charge regarding a discrete

---

[23]Doc. 38-12, Ex. L at 4.

[24]*See* Doc. 33 at 5.

[25]900 F.3d 1166, 1181–82 (10th Cir. 2018).  There is no exhaustion requirement for the claims asserted under § 1981.  *See, e.g.*, *Martin v. Cent. States Emblems, Inc.*, 150 F. App'x 852, 857 (10th Cir. 2005).

employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim."[26]  In this case, Defendant asserted failure to exhaust as a defense in the Pretrial Order, and raised the issue of exhaustion in its motion for summary judgment.  It also addressed the issue in the context of an affirmative defense in the reply brief, filed after the *Lincoln* decision was issued.  The Court therefore considers Defendant's exhaustion argument as an affirmative defense.

The primary distinction between treating exhaustion as jurisdictional rather than as an affirmative defense, is that as an affirmative defense it is subject to waiver and estoppel.[27]  The difference is immaterial where waiver and estoppel do not come into play.[28]  Here, Defendant did not waive the defense because it was raised in both the Answer and the Pretrial Order.[29]  And Plaintiff does not raise estoppel.  Thus, the Court proceeds to consider whether Defendant has met its burden to demonstrate exhaustion as an affirmative defense based on the same standards that governed its applicability as a jurisdictional issue.

To exhaust administrative remedies, a plaintiff must file a charge of discrimination with either the EEOC or an authorized state agency and receive a right-to-sue letter based on that charge.[30]  The Court must liberally construe the administrative charge to determine whether a particular claim has been exhausted.[31]  The inquiry "is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in

---

[26]*Id.* at 1185.

[27]*Id.* at 1186 n.11.

[28]*Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).

[29]*See* Doc. 5 at 6 ¶ 8; Doc. 33 at 7.

[30]*See* 42 U.S.C. § 2000e(5)(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

[31]*Smith*, 904 F.3d at 1164; *Jones v. U.P.S.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

the administrative charge."[32]

Plaintiff's administrative charge alleges race discrimination on the following basis: "On April 28, 2016, I was denied a position for the 2016-2017 school years. However, on April 22, 2016 and April 29, 2016, the Respondent posted several teaching positions for the 2016-2017 school year."[33] Plaintiff does not dispute that his unlawful termination and failure to hire for the Harvesters Program claims were not included in his administrative charge. Instead, he argues that his exhausted claims are "similar to" his unlawful termination allegation and are part of a "continuing effort by defendant to eliminate plaintiff from its workforce."[34] Plaintiff further argues that the facts surrounding his unexhausted claims are material to his exhausted claim for failure to hire for the following school year.

While it may be true that the facts surrounding the unexhausted claims are relevant to the exhausted claim, relevance is not the standard. Under the notice standard that applies, the Court easily finds that the only exhausted claim alleged by Plaintiff in this case is the failure to hire him for the 2016–17 school year. Nothing in the charge puts Defendant on notice that Plaintiff would allege unlawful termination in December 2015—in fact, the charge alleges he was unlawfully terminated on May 16, 2016, a claim that is tied to his failure to hire claim. Accordingly, neither the KHRC nor the employer was on notice of a need to investigate the facts surrounding his 2015 termination, or the Harvesters Program failure-to-hire allegation, and those two Title VII claims must be dismissed on the affirmative defense of failure to exhaust.

---

[32]*UPS*, 502 F.3d at 1186; *Jones v. Wichita State Univ.*, 528 F. Supp. 2d 1222, 1237 (D. Kan. 2007).

[33]Doc. 38-12 at 1.

[34]Doc. 45 at 14.

## 2.     Discrimination for Failure to Hire for 2016–17 School Year

Plaintiff's disparate treatment and retaliation claims must be decided under the familiar *McDonnell Douglas v. Green*[35] burden-shifting framework because Plaintiff relies on circumstantial evidence.[36]  Under *McDonnell Douglas*, plaintiff initially bears the burden of production to establish a prima facie case of discrimination or retaliation.[37]  The burden of establishing the prima facie case is "not onerous."[38]  If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions.[39]  If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief."[40]

To establish a claim for failure-to-hire under Title VII and § 1981, Plaintiff must show: (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the plaintiff was rejected; and (4) after his rejection, the position remained open and Defendant continued to seek applicants from persons with Plaintiff's qualifications.[41]

Defendant does not contest that Plaintiff belongs to a protected class, but argues that Plaintiff cannot satisfy the other elements of his failure-to-hire claim.  First, Defendant argues there is no evidence that Plaintiff applied for and was qualified for any 2016–17 teaching

---

[35]411 U.S. 792, 802–05 (1973).

[36]*See, e.g.*, *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

[37]*McDonnell Douglas*, 411 U.S. at 802.

[38]*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 238, 253 (1981).

[39]*Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

[40]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[41]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005).

positions.  Yet the parties dispute whether Plaintiff's application submitted in the summer of 2015 continued to serve as an application for subsequent openings for which he was qualified after he was hired.  And the evidence, when viewed in the light most favorable to Plaintiff, supports his contention that his summer 2015 application should have caused Defendant to consider him for other teaching positions that became available for the 2016–17 school year.  Keystone's October 1, 2015 letter made clear that it would keep Plaintiff's application on file and consider him for other positions that may become available.  And Newman testified that she routinely held on to applications for eighteen months—the positions for which Plaintiff claims he should have been considered were posted within this window of time.  Newman's testimony that Plaintiff's application was no longer considered active because of his subsequent temporary employment may be true, but this fact was not communicated to Plaintiff.

Next, Defendant argues that Plaintiff cannot demonstrate he was rejected for a teaching position during the 2016–17 school year.  Defendant points to evidence that Plaintiff was offered a position as a paraprofessional during the 2016–17 school year.  But Plaintiff argues that this position was for less money than a teaching position, and that he was not considered for teaching positions, despite being qualified.

Finally, Defendant argues that the positions at issue were filled with qualified applicants; they did not remain open.  But this argument depends on there being a lack of evidence that Plaintiff applied for the open teaching positions.  Plaintiff, however, has submitted evidence that he thought his 2015 application continued to serve as an application for open positions in 2016–17, and he did not receive the emails sent by human resources in the spring of 2016 that may have prodded him to investigate those positions before they were filled.  Plaintiff has met his

light burden of demonstrating a prima facie case of discrimination for failure to hire him for the 2016–17 school year.

The burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for not hiring Plaintiff. Defendant maintains that it hired teachers for the 2016-17 academic year who actually applied and were qualified for the positions. Therefore, the burden shifts back to Plaintiff to demonstrate that Defendant's stated reason for its decision was a pretext for discrimination. Plaintiff can demonstrate pretext by showing "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[42] Mere conjecture is not enough; a plaintiff must "cast doubt" on the employer's explanations by specifically pointing out these "implausibilities, incoherencies, or contradictions."[43]

Typically, a plaintiff attempts to demonstrate pretext in one or more of three ways:

> (1) "evidence that the defendant's stated reason for the adverse employment action was false"; (2) "evidence that the defendant acted contrary to a written . . . policy prescribing the action to be taken by the defendant under the circumstances"; or (3) "evidence that the defendant acted contrary to an unwritten policy or contrary to [the employer's] practice when making the adverse employment decision affecting the plaintiff." Regardless of which methods the plaintiff uses, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[44]

---

[42]*Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997).

[43]*Id.* at 1323–25.

[44]*Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)) (citations omitted).

Here, Plaintiff makes a single argument in support of his pretext showing: that Coughlin's statement to him in the spring of 2016 that no teaching positions at Keystone were available the following school year was false.

Plaintiff offers no evidence that Coughlin's statement was false at the time it was made. Of course, Coughlin was the principal of but one school with which Keystone placed its teachers. Moreover, Coughlin's cited-to deposition testimony states that there was a special education teacher position available in the 2015–16 school year; it does not support Plaintiff's assertion that "defendant advertised for at least three special education teacher positions" for the 2016–17 school year.[45]  That leaves Plaintiff's own testimony that Coughlin gave him false information, but Plaintiff merely states that after Coughlin's told him there were no open teaching positions, he learned that Keystone had advertised for teaching positions "in the spring of 2016."  He does not specify the positions to which he refers, when they were posted, or when they were filled.

And even if the Court concludes that there is a genuine issue of material fact about whether Coughin's statement that there were no open teaching positions was false, that would not be sufficient to create a triable issue on pretext under the circumstances of this case.  A false explanation for an employment decision will only evidence pretext "where the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."[46]  "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."[47]  It is the "the nature and quantum of plaintiff's proof [that] is

---

[45]*Compare* Doc. 45 at 8 ¶ 30 *with* Doc. 45-3, Ex. 2 at 14:18–25

[46]*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

[47]*Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) (quoting *Burlington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999)).

key, for the Supreme Court has also explained that evidence about the falsity of an employer's proffered race-neutral explanation for termination will not "always be adequate to sustain . . . liability."[48]  Plaintiff comes forward with no evidence that Coughlin was aware of the falsity of her statement at the time she made it, or that she intentionally misrepresented that there were no vacant teaching positions.  Moreover, Coughlin did offer Plaintiff a job as a paraprofessional, which cuts against Plaintiff's suggestion that Coughlin harbored a racial animus when making hiring decisions, to the extent those decisions were hers to make.  In sum, the nature and quantum of Plaintiff's evidence that Keystone's reason for not hiring him as a teacher for the 2015–17 year was false is not enough to fulfill Plaintiff's burden of demonstrating pretext.  As such, summary judgment is appropriate on Plaintiff's Title VII failure-to-hire discrimination claim.

### 3.    Retaliation

In the Pretrial Order, Plaintiff claims "he was retaliated against for having opposed his termination from employment in December, 2015, in violation of title VII [sic] when he was denied employment opportunities with Keystone."[49]  The elements of a prima facie claim of retaliation under Title VII are: (1) the employee engaged in protected opposition to discrimination; (2) the employee suffered an adverse employment action during or after his protected opposition that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.[50]

Defendant argues that Plaintiff cannot meet his light burden of coming forward with evidence in support of his prima facie case of retaliation.  First, Defendant argues that Plaintiff

---

[48]*Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quoting *Reeves*, 530 U.S. at 148).

[49]Doc. 33 at 5.

[50]*McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006).

never engaged in protected activity in opposing his termination in December 2015. Plaintiff

claims that his assertion in December 2015 of his right to continued employment at Keystone

was sufficient protected activity, even if he did not challenge the termination on the basis of race

discrimination. To show he engaged in protected activity, Plaintiff must have either

"participated in a Title VII investigation or opposed Title VII violations."[51] "Protected

opposition can range from filing formal charges to voicing informal complaints to superiors."[52]

The plaintiff must have subjective good faith belief that Title VII had been violated.[53] Plaintiff's

opposition to the December 2015 termination does not constitute protected activity. The letter

written by Plaintiff's attorney to Keystone challenged the termination decision under the terms of

Plaintiff's employment contract. The letter did not infer nor mention that the termination

decision was unlawful under Title VII. In fact, there is no evidence in the record that Plaintiff

complained about unlawful activity under Title VII until his administrative charge was filed in

July 2016.

Second, Defendant argues that there is no evidence of a causal connection between

Defendant's alleged protected activity in December 2015, and Defendant's decision not to hire

him as a teacher for the 2016–17 year. Plaintiff responds that the temporal proximity between

Plaintiff challenging his December 2015 termination and Coughlin falsely telling him in the

spring of 2016 that no teaching jobs were available in the following fall, is sufficient evidence of

a causal connection. The Tenth Circuit has found a causal connection exists between the

protected activity and the materially adverse action "where the plaintiff presents evidence of

---

[51]*Rowland v. Franklin Career Servs., LLC*, 272 F. Supp. 2d 1188, 1207 (D. Kan. 2003) (citing 42 U.S.C. § 2000e-3(a)).

[52]*Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).

[53]*Id.* (citing *Love v. Re/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984)).

circumstances that justify an inference of retaliatory motive."[54]  Courts typically consider "protected conduct *closely followed by* adverse action" as sufficient evidence.[55]  However, when sufficient time has elapsed between the protected conduct and the adverse action, a court requires "additional evidence beyond temporal proximity to establish causation."[56]  When analyzing the additional evidence, the court can consider all the proffered evidence of retaliatory motive, which includes pretext evidence.[57]  "In order to make a prima facie case, one must only introduce evidence from which an inference can be drawn that an employer would not have taken the adverse action had the employee not filed prior discrimination charges."[58]  The Supreme Court has recently clarified that a Title VII plaintiff asserting a claim of retaliation must show that his protected activity was the but-for cause of the alleged adverse employment action, and not merely a motivating factor.[59]

Even if Plaintiff could show that he engaged in protected activity after his December 2015 termination, the evidence he submits on causation is insufficient.  Plaintiff claims that Coughlin's false assertion that there were no teaching positions available was made at the end of the 2015–16 school year, several months after his December 2015 termination.  The decision not to hire him for the following year, conveyed to Plaintiff at least four months after his attorney's

---

[54]*Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007).

[55]*Id.* (emphasis added).

[56]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *see e.g., Haynes v. Level 3 Commc'ns, LLC,* 456 F.3d 1215, 1228 (10th Cir. 2006) (holding one and one-half months establishes causation while three months is too long and does not), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

[57]*Xia v. Salazar*, 503 F. App'x 577, 580 (10th Cir. 2012) (citing *Anderson*, 181 F.3d at 1179).

[58]*Tex. Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981)

[59]*Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

December 2015 letter, thus did not closely follow allegedly protected activity. Therefore, Plaintiff must come forward with more than temporal proximity as evidence of causation.

For the same reasons discussed on the discrimination claim, Plaintiff's additional pretext evidence that Coughlin falsely told him there were no vacant teaching positions for 2016–17 is unavailing. There is a lack of evidence that her representation was false, and there is a lack of evidence that it was made intentionally as a way to cover up racial animus. As such, Plaintiff is unable to meet his burden of demonstrating a prima facie case of retaliation.

Again, Defendant states that it had a nonretaliatory reason for not hiring Plaintiff—it hired teachers for the 2016-17 academic year who actually applied and were qualified for the positions. Plaintiff offers the same pretext evidence on his retaliation claim as he offered on his discrimination claim. For the same reasons described under the Court's pretext analysis on that claim, Plaintiff could not demonstrate pretext even if he met his light prima facie burden on this claim. Accordingly, summary judgment is granted.[60]

### B.    42 U.S.C. § 1981 Claims

Plaintiff asserts discrimination and retaliation claims under 42 U.S.C. § 1981, based on the same theories advanced on his Title VII claims. Section 1981 "does not provide a vehicle for remedying racial discrimination and retaliation in cases brought against state actors. Rather, § 1983 'provides the exclusive federal damages remedy for the violation of the rights guaranteed

---

[60]The Court does not discuss Defendant's assertion of the *Faragher/Ellerth* defense because Plaintiff does not seek to hold Keystone vicariously liable for the acts of a subordinate supervisor. See *Helm v. Kansas*, 656 F.3d 1277, 1284–86 (10th Cir. 2011) for a discussion of this affirmative defense when considering an employer's vicarious liability for harassing conduct by a supervisor. Likewise, Defendant's authority on the presumption of good faith afforded to governmental entities does not involve claims alleging unlawful discrimination. *See, e.g., Hortonville Jt. Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 494–95 (1976) (discussing a good faith presumption in the context of a due process claim); *Withrow v. Larkin*, 421 U.S. 35, 41–42 (1975) (same).

by § 1981 when the claim is pressed against a state actor.'"[61]  Defendant first argues that summary judgment is appropriate on Plaintiff's § 1981 claims because he failed to allege them under § 1983.  Plaintiff concedes that his claims should have been brought under § 1983, but characterizes this failure as a technicality that warrants leave to amend, citing *Bolden v. City of Topeka*.[62]

The Pretrial Order was entered in this matter on May 29, 2018, before the summary judgment deadline.  It supersedes all pleadings and controls the subsequent course of the case.[63] "When an issue is set forth in the pretrial order, it is not necessary to amend the previously filed pleadings" because "the pretrial order is the controlling document for trial."[64]  The court may modify a final pretrial order "only to prevent manifest injustice."[65]  The party moving to modify the pretrial order bears the burden of demonstrating the applicability of manifest injustice.[66] Courts look to the following factors to determine whether to amend or modify a pretrial order: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; (4) bad faith by the party seeking to modify the order."[67]

---

[61]*Hannah v. Cowlishaw*, 628 F. App'x 629, 632 (10th Cir. 2016) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491, U.S. 701, 705 (1989)) (citation omitted).

[62]441 F.3d 1129 (10th Cir. 2006).

[63]*See* Fed. R. Civ. P. 16(e); D. Kan. Rule 16.2(b).

[64]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006); *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (quoting *Expertise Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 1987); Fed. R. Civ. P. 16(e)).

[65]Fed. R. Civ. P. 16(e); *accord* D. Kan. Rule 16.2(b) (recognizing that the final pretrial order "will control the subsequent course of the action unless modified by consent of the parties and court, or by an order of the court to prevent manifest injustice.").

[66]*Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000).

[67]*Id.*

Plaintiff, who bears the burden of demonstrating manifest injustice, wholly fails to address these factors, relying solely on *Bolden*. In *Bolden*, the pro se plaintiff alleged in the pretrial order race discrimination under § 1981, and First Amendment retaliation under § 1983 against his former municipal employer. The Tenth Circuit considered whether the district court erred in granting summary judgment to the defendant because the plaintiff did not plead his race discrimination claim under § 1983.[68] The court found that while § 1983 was indeed the exclusive remedy for the plaintiff's race discrimination claim against the City, "it applied [the law] with too heavy a hand."[69]

> Apparently the § 1981 claim could have escaped dismissal if Mr. Bolden had merely added an allegation that he sought relief on the claim under § 1983. Dismissal on such a technical ground, without granting leave to amend, would rarely be appropriate. As we shall see, the thrust of *Jett* was not to impose a technical pleading requirement but to clarify that a § 1981 claim against a local government cannot be predicated on respondeat superior, a limitation imposed on § 1983 claims.[70]

In *Bolden*, the plaintiff proceeded pro se and had already alleged a § 1983 claim in the pretrial order. The court found that his previously alleged § 1983 claim incorporated his § 1981 claim, and to the extent the pretrial order was not clear, he should have been granted leave to amend.[71] In this case, Plaintiff made no attempt to allege a § 1983 claim at any time prior to the response to his summary judgment motion. Moreover, Plaintiff does not proceed pro se. *Bolden* has been controlling precedent for more than a decade, yet Plaintiff shows no good cause for his counsel's failure to properly plead his claim under § 1983. Moreover, prejudice will ensue to

---

[68]*Bolden v. City of Topeka*, 441 F.3d 1129, 1133–34 (10th Cir. 2006).

[69]*Id.* at 1134.

[70]*Id.*

[71]*Id.* at 1137.

Defendant given that the trial date is two months away and discovery has long since closed. These factors weigh against modifying the Pretrial Order.

Defendant also argues that summary judgment is appropriate even if the Court grants Plaintiff leave to modify the Pretrial Order to assert his claims under § 1983. The Court agrees. First, the failure to hire claim and the retaliation claim fail for the same reasons summary judgment is granted on those claims under Title VII. Second, in addition to alleging discrimination and retaliation under the *McDonnell Douglas* framework, Plaintiff must establish municipal liability for § 1983 liability to attach.[72]

> Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." Municipal liability may [] also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.[73]

Because there can be no *respondeat superior* under § 1983, Plaintiff must show that the discriminatory and retaliatory actions were made by the "final policymakers" for Defendant.[74]

Plaintiff has failed to identify a genuine issue of material fact as to municipal liability for his race discrimination and retaliation claims. Plaintiff argues that Defendant has a practice of not hiring minority teachers at the John Dewey Academy. He argues further that Coughlin is the final decisionmaker for Defendant's hiring decisions at that school. But Plaintiff fails to point to

---

[72]*Jett*, 491 U.S. at 735.

[73] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

[74]*Jett*, 491 U.S. at 736–37.

any evidence of these claims.  The only evidence to support Plaintiff's claim of a discriminatory hiring practice is Coughlin's testimony that Plaintiff was the first African-American teacher at John Dewey Academy that she recalled during her tenure there as principal.  Plaintiff also claims that Coughlin was the decisionmaker for Defendant, pointing to the fact that he began working under the temporary contract in January 2016, despite the lack of Board approval.

Defendant denies that it had a practice of not hiring minority teachers, and denies that Coughlin was a final decisionmaker.  The Court finds that Plaintiff's evidence fails to create a genuine issue of material fact as to municipal liability in this case.  He has not demonstrated a widespread or well settled practice of not hiring minority teachers by Keystone.  He has only submitted evidence that he was the first African-American teacher at one of the schools with which Keystone serves during a seventeen-year period.  It is uncontroverted that he was not the first or only African-American teacher hired by Keystone.

Second, Plaintiff comes forward with no evidence to support his contention that Coughlin had final policymaking authority on hiring and firing decisions for Defendant.  Under Kansas law, a school board has final decision-making authority for its school district.  And school boards lack statutory authority to delegate hiring decisions to subordinates.[75]  It is true that "decisionmakers cannot insulate themselves from liability under section 1983 by *knowingly* allowing a subordinate to exercise final policymaking authority vested by law in the decisionmakers."[76]  But there is no evidence that the decision not to offer Plaintiff a teaching job for the 2016–17 year was made by Coughlin—the evidence demonstrates that she told Plaintiff there were no teaching jobs available.  The evidence does not suggest that she communicated this

---

[75]*Id.*

[76]*Id.*

to him as a policy statement or that he was not being hired in accordance with Defendant's custom or usage. "Delegation must be absolute to give rise to the 'final authority.' If the board retains the authority to review, even though it may not exercise such review or investigate the basis of the decision, delegation of final authority does not occur."[77] The evidence suggests that Defendant's employment contracts each required Board approval, a fact known to Plaintiff given the uncontroverted evidence that Ewing told Plaintiff that his January 2016 contract was contingent on Board approval. This is also supported by both of Plaintiff's employment contracts, which were signed for Keystone by the President and Clerk of the Board, not by Coughlin, the school principal.

There is further evidence that Plaintiff by and through his counsel understood that Coughlin was not a final decisionmaker. On May 25, 2016, Plaintiff's attorney sent a letter to members of the Keystone Board of Directors, in addition to Coughlin, stating that Plaintiff would decline the paraprofessional position because he believed he continued to be employed under his October 2015 contract, which was subject to renewal. Similarly, Plaintiff's counsel met with the Board's counsel, not Coughlin, in December 2015, after his substitute position was terminated. After that discussion, Ewing, the Executive Director of the Board, told Coughlin to find a place for Plaintiff in the spring at John Dewey Academy. These facts strongly suggest that Defendant did not delegate authority to make hiring and firing decisions to Coughlin, the school principal, and that Plaintiff was well aware of this fact.

Because Plaintiff cannot demonstrate a genuine issue of material fact on municipal liability, summary judgment is granted in favor of Defendant on Plaintiff's § 1981 claims, to the extent he is allowed to modify the Pretrial Order and plead them as § 1983 claims.

---

[77] *Jantz v. Muci*, 976 F.2d 623, 631 (10th Cir. 1992) (citing *Praprotnik*, 485 U.S. at 130).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for

Summary Judgment (Doc. 37) is **granted**.

**IT IS SO ORDERED.**

Dated: November 19, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
